**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ENCOMPASS ENTERPRISES LLC | ) | Case No. 26-26-11403 |
| | ) | Chapter 11 |
| Debtor in Possession | ) | |
| | ) | |

**THIRD MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

**COMES NOW** Debtor and Debtor-in-Possession herein, Encompass Enterprises LLC (the "Debtor" or "Encompass") with its Motion for an order authorizing it to use cash collateral for the period of October 30, 2026 through June 25, 2027, granting adequate protection and related relief. The Motion is made pursuant to 11 U.S.C. §§ 361, 362 and 363 and Fed. Rules of Bankr. Proc. Rules 4001 and 9014. In support of this Motion, the Debtor respectfully states:

1. On February 9, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its properties, affairs, and assets as a debtor-in-possession. No trustee, examiner, or committee has been appointed in this case.

**A. Jurisdiction and Venue**

2. The Court has jurisdiction over this Motion. 28 U.S.C. §§ 157 and 1334. This is a core proceeding. 28 U.S.C. § 157(b). Venue is proper in this Court for this Motion. 28 U.S.C. §§ 1408 and 1409, respectively. The basis for the relief requested is Bankruptcy Code §§ 105, 361, 363, 503 and 507 and Fed. Rules of Bankr. Proc. 4001.

**B. Factual Background.** [1]

3. In 2918, Eugene Benton formed the Debtor, a Maryland limited liability company located in Lusby, Maryland, to provide residential and commercial construction services. Mr. Benton serves as the Debtor's Manager and principal. Its operations include building custom new homes, elevating and moving structures to new locations and securing them to new foundations, renovating existing homes, and making various home improvements such as additions, kitchens bathrooms and full property gutting and remodels.

4. The Debtor acts as a contractor for commercial construction projects, including building steel structures, performing commercial renovations, master planning for larger projects, design-build services, and property management.

5. The Debtor rapidly grew it business and secured sizeable contracts. However, Covid 19 put a severe crimp on the company's ability to conduct operations. The pandemic disrupted supply chains, and severely increased material costs. Project timelines were slowed which created a severe strain on the Debtor's cash flow. Funding ongoing jobs became increasingly difficult. The company continued to secure additional jobs and hired additional staff. However, many of the new employees proved to be unqualified, exacerbating the existing problems.

6. To attempt to solve its financial problems, Encompass turned to Merchant Cash Advance ("MCA") loans to continue its business. MCA lenders profit from upfront charges and charge extremely high interest rates. The initial expectation was that the MCA loans would resolve financial problems, but the loans quickly became a cycle of recurring MCA loans for the Debtor to stay afloat. MCA lenders routinely withdrew funds from the

---

[1] The facts in this section are drawn from the First Day Declaration of Eugene Benton, at docket no. 7.

company's bank accounts, making it challenging to cover payroll, payroll taxes, job costs, and overhead. The majority of the MCA loans were repaid prepetition; but several remain outstanding at the petition date.

7. The burden of the MCA loans further depleted cash on hand, strained operations and delayed jobs. This led to more customer dissatisfaction. In some cases, delays were also caused by property owners' inability to secure timely zoning changes or permits. These issues also negatively impacted the Debtor's cash flow.

8. During the chapter 11 case, the Debtor has generated net positive cash flow, has increased its gross revenues from early in the case and stabilized the business.

**C. Request for Authority to Use Cash Collateral**.

9. By this Motion, the Debtor seeks the entry of an order,[2] in the form attached hereto as **Exhibit "A"** (the "Order"), authorizing the Debtor to continue to use Cash Collateral in accordance with the budget attached hereto as **Exhibit "B"** (the "Budget"), and granting adequate protection to the entities asserting liens on the Debtor's cash collateral. **Exhibit "C"** consists of a balance sheet as of August 31, 2026, a profit and loss statement as of August 31, 2026, a payables report, a receivables report and a budget to actual report through September 18, 2026.

10. During the proposed period, the value of the Cash Collateral (monies on hand and receivables) is not projected to decline.

11. The Debtor requires the continued use of Cash Collateral to meet its ongoing working capital and general business needs, which include costs of goods sold ("COGS"), payroll

---

[2] As discussed below, while the Debtor believes the Internal Revenue Service holds the senior recorded lien in assets and monies, the proposed Order does not include a finding as to the I.R.S.'s lien, whether it is perfected, valid or its priority.

and payroll taxes, advertising and marketing, supplies, insurance and rent, the payment of which is necessary for the Debtor to complete existing work and perform new work.

12. The following entities have filed financing statements with the Maryland Secretary of State:

| Entity | Presumed Priority | Date UCC Filed and Scheduled Debt Amount | Asserted Collateral |
|---|---|---|---|
| Fox Funding (an MCA) | 1st | July 6, 2023, $106,560.04 | Accounts and proceeds |
| C.T. Corp (as representative) – believed to be Unique Funding Solutions | 2nd | July 24, 2024 $118,652.32 | Receivables and proceeds |
| Parkview Advance (an MCA) | 3rd | October 16, 2024 $36,642.50 | All assets, accounts, inventory, equipment and receivables |
| CSC (as representative) – Specialty Capital, LLC | 4th | October 25, 2024 $80,725 | Receivables |
| CT Corp (as representative) – Believed to be Peninsula Funding Group | 5th | All personal property, accounts $23,201.50 | June 27, 2025 |

13. For purposes only here, the Debtor assumes (without admission) that each financing statement is valid and perfected. For the reasons explained below, none of the liens attach to any of the Debtor's assets. [3]

14. In addition to the filings listed above, the Internal Revenue Service (the "IRS") filed multiple liens in Calvert County, Maryland:

---

[3] Section 363(p)(2) provides that "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest."

| IRS Filing Date | Amount Asserted | Type of Tax Asserted Owed; Period | Recordation or Case No. |
|---|---|---|---|
| August 21, 2024 | $96,962.84 | 941 | xxx 0645 |
| October 25, 2024 | $50,483.27 | 941 | xxx 0770 |
| January 24, 2025 | $9,801 | 941 | xxx 0059 |
| June 30, 2025 | $46,611.04 | 940/941 | xxx 0926 |

15. The IRS liens are superior in right to all other recorded liens and security interests in the Debtor's assets other than purchase money security interests. Once a federal notice of tax lien is filed, the United States enjoys priority as to property a taxpayer thereafter acquires as against competing lienholders such as the MCAs. 26 U.S.C. §§ 6322, 6323(a), (f); *United States v. McDermott*, 507 U.S. 447 at 453-55 (1993).

16. Once the IRS lien was recorded and 45 days passed, any than existing liens would have priority as to existing receivables but not as to future receivables or monies. As time moved on and receivables were paid, the value of the assets subject to the then existing liens were depleted. The IRS liens would have priority over all then liens.

17. The MCA liens were filed first in time but as the IRS lien aged, the Debtor used up its existing monies and collected and spent its then existing receivables and so the IRS lien attached first to all of the Debtor's cash collateral. The value of cash collateral on hand, as of the Petition Date, is significantly less than the IRS' secured claim. The MCA liens attach to nothing.

18. The proposed Order addresses the Debtor's cash requirements, adequately protects the interests of the secured entities and constitutes the best alternative under the circumstances. With respect to offering adequate protection, the Debtor offers $1,000 monthly to the IRS. Adequate protection is also provided by the projected increase of monies on hand and

receivables and by the continued operation of the business, obtaining new contracts for work and creating new receivables. All assets are adequately insured.

19. The requested relief is necessary to the Debtor's continued operation and reorganization. If relief is not granted, then the Debtor will suffer irreparable harm in that it could be forced to cease operations, gravely damaging its going concern value for creditors, creating additional claims against the estate and eliminating vital jobs for its employees.

20. Encompass does not have other sources of working capital and financing to operate without using the Cash Collateral. Preserving and maintaining its business and assets is necessary to its reorganization and the maximization of the return to all creditors. The Debtor intends to reorganize, remain in business and pay a dividend to its general unsecured creditors.

21. The Debtor has done its best to make accurate projections concerning its anticipated income and expenses during the proposed period. However, budgeting is not an exact science and the Debtor must have the ability to make some adjustments or risk losing its customers and business. There may be considerable variance during the period. In the construction industry, jobs may begin sooner or later than forecast and there may be unanticipated change orders, weather and supplier delays and other events which change both the construction *and* payment schedule. Therefore, Encompass requests that it be permitted to vary from the budget by as much as 20% in any one category where projected weekly spending is under $2,000 and by as much as 15% as to any other category. If the Debtor determines it needs to vary from any one budgeted item by more than the 15% or 20% variances, then it proposes that it be required to provide written notice by email to the IRS. If it does not timely object by email to Debtor's counsel within three business days,

then the variance shall be deemed approved. If the IRS objects to the additional spending, then the Debtor shall file a motion with the Bankruptcy Court for approval of the variance.

22. The budget is a weekly budget. If the Debtor underspends in a particular category(ies), the Debtor requests that it be authorized to rollover (or accrue) the unspent amounts with any unused monies to be used in the same categories in future weeks. The rollover is important because the Debtor is projecting revenues, COGS and expenses on a weekly basis but some revenues or expenses may occur sooner or later than projected.

23. During this case, the Debtor's weekly receipts may be higher than projected, which may strain the Debtor's budgeting resulting in higher expenses. Higher than projected gross revenues means the Debtor is over-performing. However, it also means that its costs, particularly its COGS, will be higher than projected. If its gross revenues exceed projected figures, the Debtor requests that it be permitted to utilize up to 75% of any excess gross revenues to COGS sold and the balance to expenses not tied to specific jobs (in addition to any permitted variances).

WHEREFORE, the Debtor prays that the Court enter the attached order authorizing it to use cash collateral for the period October 30, 2026 through June 25, 2027, granting adequate protection and granting such other and further relief as may be appropriate.

Dated: October 1, 2026

Respectfully submitted,

/s/ Steven R. Fox
Steven R. Fox, Esq, *pro hac vice*
(Calif. Bar No. 138808)
The Fox Law Corporation, Inc.
15455 San Fernando Mission Blvd., Suite 400
Mission Hills, CA 91345
PH: (818) 774-3545
srfox@foxlaw.com
*Counsel to Debtor*

/s/ Christopher L. Rogan
Christopher L. Rogan, Esq. (MD Bar 08365)
RoganMillerZimmerman, PLLC
50 Catoctin Circle, NE, Ste 300
Leesburg, Virgina 20176
PH: 703-777-8850
crogan@rmzlawfirm.com
*Local Counsel to Debtor*

CERTIFICATE OF SERVICE

The undersigned does hereby certify that the foregoing MOTION was served upon the Office of the United States Trustee and all other parties requesting notice via ECF on this 1st day of October, 2026, and upon the following, via First Class Mail, postage prepaid:

United States, Internal Revenue Service

Fox Funding

Parkview Advance

Specialty Capital, LLC

Peninsula Funding Group.

20 largest unsecured creditors

/s/ Steven R. Fox

Steven R. Fox